Bobby WHISENANT, Appellant,

v.

Dr. Stanley YUAM; Chris Johnson, Administrator of Grace Hospital; Jerry Richards, Sheriff of Burke Co.; Bill Hamrick, Chief of Police, Morganton, NC; John Suttles; Johnny Wehunt; John McDevitt, Sheriff's Deputy, Morganton, NC; Ronnie Hudson, Chief Detective, Morganton, NC Police Dept.; Steve Whisnant, Detective, Sheriff's Dept., Morganton, NC; Charles Whitman, SBI Agent, Hickory, NC; Joe Clark, Chief Jailer, Burke County Jail, Morganton, NC, Appellees.

Bobby WHISENANT, Appellee,

v.

Dr. Stanley YUAM; Chris Johnson, Administrator of Grace Hospital; Jerry Richards, Sheriff of Burke Co.; Bill Hamrick, Chief of Police, Morganton, NC; John Suttles; John McDevitt, Sheriff's Deputy, Morganton, NC; Steve Whisnant, Detective, Sheriff's Dept., Morganton, NC; Charles Whitman, SBI Agent, Hickory, NC; Joe Clark, Chief Jailer Burke County Jail, Morganton, NC, Defendants,

and

Johnny Wehunt; Ronnie Hudson, Chief Detective, Morganton, NC Police Dept., Appellants.

Bobby WHISENANT, Appellee,

v.

Dr. Stanley YUAM; Chris Johnson, Administrator of Grace Hospital; Bill Hamrick, Chief of Police, Morganton, NC; John Suttles; Johnny Wehunt; Ronnie Hudson, Chief Detective, Morganton, NC Police Dept.; Charles Whitman, SBI Agent, Hickory, NC, Defendants,

and

Jerry Richards, Sheriff of Burke Co., Steve Whisnant, Detective, Sheriff's Dept. Morganton, NC; Joe Clark, Chief Jailer, Burke County Jail, Morganton, NC; John McDevitt, Sheriff's Deputy, Morganton, NC, Appellants.

Bobby WHISENANT, Appellee,

v.

Dr. Stanley YUAM; Chris Johnson, Administrator of Grace Hospital; Jerry Richards, Sheriff of Burke Co.; Bill Hamrick, Chief of Police, Morganton, NC; Johnny Wehunt; John McDevitt, Sheriff's Deputy, Morganton, NC; Ronnie Hudson, Chief Detective, Morganton, NC Police Dept.; Steve Whisnant, Detective, Sheriff's Dept., Morganton, NC; Joe Clark, Chief Jailer, Burke County Jail, Morganton, NC, Defendants,

and

John Suttles; Charles Whitman, SBI Agent, Hickory, NC, Appellants.

No. 83–6301(L), 83–6302 to 83–6304.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1984.

Decided July 17, 1984.

C. Frank Goldsmith, Jr., Marion, N.C., for appellant.

Sam J. Ervin, IV, Morganton, N.C., (Robert B. Byrd, Byrd, Byrd, Ervin, Blanton, Whisnant & McMahan, P.A., Morganton, N.C., on brief); Thomas G. Smith, Valdese, N.C., (W. Harold Mitchell, Mitchell, Teele, Blackwell, Mitchell & Smith, Valdese, N.C., on brief); Daniel C. Higgins, Associate Atty. Gen., Raleigh, N.C., William C. Morris, Jr. (Morris, Golding & Phillips, Asheville, N.C., on brief), for appellees.

Before WINTER, Chief Judge, SPROUSE, Circuit Judge, and BUTZNER, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

The district court entered judgment on the jury's verdict for defendants in plaintiff's *pro se* action under 42 U.S.C. § 1983 against various North Carolina police officers, prison officials, and two private citi-

zens. The plaintiff asserted that defendants' inattention to his serious medical needs while he was in pretrial custody deprived him of his rights under the fourteenth amendment. Although plaintiff had requested the appointment of counsel to assist him in presenting his case, the district court denied the request on the ground that federal funds were not available to pay counsel.

Plaintiff appeals, as do defendants, who contend that their motions for directed verdicts should have been granted, and we reverse. We conclude that this is a case in which the district court abused its discretion in refusing to appoint counsel notwithstanding the lack of federal funds to compensate him. We think that plaintiff is entitled to a new trial with counsel. Since we think that the original trial was tainted by the absence of counsel, we do not rule on defendants' claim to directed verdicts. Because the case must be retried, we also rule on the district court's instructions to the jury.

## I.

North Carolina police officers arrested plaintiff for murder around 5:00 p.m. on July 7, 1981, in the emergency room of a Morganton, N.C. hospital, where he was seeking treatment for injuries sustained in a motorcycle accident three days earlier. Although he had received medical attention for a broken ankle as well as broken ribs and toes shortly after the accident and was, by the 7th, able to walk on crutches, his injuries apparently continued to bother him. He also testified that he had gone to the hospital because he had vomited blood and experienced rectal bleeding, but the hospital records did not note any such complaints. Dr. Yuan, the physician who examined him in the emergency room, testified that these complaints were not mentioned.

The police officers apparently arrived at some point during Dr. Yuan's examination and took plaintiff into custody without objection from the doctor. Although plaintiff claimed the doctor merely grunted when asked whether plaintiff could leave, the officers and the doctor testified that he said it was permissible for the officers to take the plaintiff to jail. Plaintiff and his wife testified that they told the officers he was bleeding internally, but that the officers nonetheless took him to the Morganton police station for processing.

The processing took only about thirty minutes, and then plaintiff was taken to the Burke County Jail. Plaintiff claimed that he complained about internal bleeding from the time he arrived at the jail, but the jail had no record of any complaint until 4:25 a.m., July 8th. After being taken to court in a wheelchair around 2:00 the afternoon of the 8th, plaintiff finally saw a doctor's assistant in his jail cell at 2:30 p.m. Some hours later, the prison doctor, himself, advised the chief jailer that plaintiff should be hospitalized if possible. For security reasons, the chief jailer and sheriff made arrangements to transfer plaintiff to a prison unit at Salisbury, some seventy miles distant, where they apparently thought he could receive medical care, instead of returning him to the local hospital.

Whisenant arrived at Salisbury around 7:00 p.m., but because the prison unit was not equipped to treat him, he was taken about three hours later to the emergency room of a local hospital. He was found to be bleeding internally from a condition known as esophageal varices, and had a seriously reduced hemoglobin level. He was immediately given three units of blood. At approximately 2:00 a.m. on the 9th, plaintiff was transferred by ambulance to Central Prison Hospital. While there, he was given eight additional units of blood, and he remained in intensive care for eight days.

After he filed suit under 42 U.S.C. § 1983, Whisenant made repeated requests for the appointment of counsel to represent him. He was seeking to press his suit from a jail cell.[1] According to him, he is barely able to read and write, and he has

1. Presumably, Whisenant was convicted of some degree of homicide.

had no experience with the law or legal procedures. His requests were all denied on the ground that federal funds were not available to compensate counsel for services to a plaintiff in an action under § 1983.[2]

## II.

■ Although Whisenant makes no claim that he has a constitutional right to the appointment of counsel for civil litigation, the district court was authorized by 28 U.S.C. § 1915(d) to appoint counsel.[3] The power to appoint is a discretionary one, but it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779 (4 Cir.1975); *see also Branch v. Cole*, 686 F.2d 264 (5 Cir.1982). The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant. As we said in *Gordon v. Leeke*, 574 F.2d 1147, 1173 (4 Cir.1978):

> If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him.

*See also Branch*, 686 F.2d at 266. ("[N]o comprehensive definition of exceptional circumstances is practical. The existence of such circumstances will turn on the quality of two basic factors—the type and complexity of the case, and the abilities of the individuals bringing it." (footnote omitted))

■ We think that in this case exceptional circumstances were present. Whisenant has a colorable claim. He is entitled to prevail if he can prove that the delay in providing him medical care stemmed from "deliberate indifference to his serious medical needs," *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 551 (1976).[4] Manifestly, because there was evidence that Whisenant was bleeding orally and rectally by at least 4:25 a.m. on July 8, if not before, but did not receive adequate medical treatment until 9:55 p.m. that night, when immediate life-sustaining measures were required, the claim of deliberate indifference is not frivolous.

Whisenant is ill-equipped to represent himself or to litigate a claim of this nature. He is relatively uneducated generally and totally uneducated in legal matters. He cannot leave prison to interview witnesses such as the doctors who eventually attended him. His version of events on July 7 and 8 is in sharp conflict with that of the defendants, so that the outcome of the case depends largely on credibility. Whisenant has no training in cross-examination.

■ The totality of these factors leads us to conclude that the denial of Whisenant's request for counsel denied him a fundamentally fair trial. The availability of federal funds is, of course, unrelated to the

---

**2.** The district court apparently failed to notice that a successful plaintiff may recover counsel fees under 42 U.S.C. § 1988.

**3.** § 1915. Proceedings in forma pauperis
[a] Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor . . . .

. . . .

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

Although the statute says that a court may "request" an attorney to represent an indigent defendant, the cases construe the statute as authorizing a court to "appoint" counsel. *See McKeever v. Israel*, 689 F.2d 1315, 1319 (7 Cir. 1982); *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4 Cir.1978).

**4.** *Estelle v. Gamble* prescribed the standard applicable to prisoners under sentence of confinement to whom the eighth amendment applies. Whisenant was a pretrial detainee at the time of the events about which he complains. But *Loe v. Armistead*, 582 F.2d 1291 (4 Cir.1978) holds that the "deliberate indifference" standard is applicable to pretrial detainees under the fourteenth amendment.

question of fundamental fairness. *See Branch*, 686 F.2d at 266–67. Moreover, as *Branch* recognizes, there is a duty on the part of the bar to accept court-appointments to represent indigent plaintiffs with colorable claims, and "42 U.S.C. § 1988 creates a meaningful prospect of realizing fees from meritorious § 1983 cases." *Id.* at 267.

Because of this conclusion, we reverse the judgment for defendants and grant Whisenant a new trial. We direct the district court to appoint counsel to represent him and to try his case.

## III.

█ Since the case must be tried anew, we turn now to the jury instructions to which Whisenant· objects. The jury was correctly instructed that Whisenant could recover if the jury found that one or more defendants "deprived him of civil rights by showing a deliberate indifference to his serious medical needs, or denied him due process of law by punishing him by depriving him of medical treatment." But, the district court elaborated upon the intent with which the jury must find that defendants acted in order for Whisenant to recover, saying that he must prove "a deliberate purpose on the part of the officers to deny the person adequate medical attention ... that it was done for the purpose of punishing him ...."

Our reading of *Estelle* convinces us that the district court erred in instructing that Whisenant could recover only if he proved that the denial of adequate medical care "was done for the purpose of punishing him ...." *Estelle*, which defines the convicted prisoner's right to medical treatment, makes no reference to punitive purpose. The prisoner's right has been violated if officials have denied him medical care through "deliberate indifference" to his "serious medical needs." The same con-

duct would violate a pretrial detainee's constitutional right to medical care while incarcerated.

It is true, as defendants argue, that *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 1873, 60 L.Ed.2d 447 (1979),[5] employs language indicating that a pretrial detainee has a valid claim to relief if he can prove that the restrictive treatment he received stemmed from an intent to punish. But this was only one prong of a two-prong test, i.e., a pretrial detainee is entitled to protection from adverse treatment if he can prove punitive intent *or* that "a restriction or condition [of confinement] is not reasonably related to a legitimate goal ...." 441 U.S. at 539, 99 S.Ct. at 1874. We can perceive no legitimate goal for a denial or unreasonable delay in providing medical treatment where the need for such treatment is apparent. If the second prong of the Bell v. Wolfish test is ignored, as defendants would have us do, we would reach the anomalous result that punitive intent would be required to establish a violation of a pretrial detainee's right to medical treatment, but not that of a prisoner under judgment of conviction. That interpretation would fly in the face of logic as well as the statement in *Wolfish*, 441 U.S. at 536–37, 99 S.Ct. at 1872–73, that a pretrial detainee is entitled to protection from any "punishment" in the constitutional sense, not just cruel and unusual punishment.

█ Whisenant also challenges the correctness of the district court's instruction that defendants' good faith would be a defense to the claim that they were deliberately indifferent to the plaintiff's serious medical needs. We agree that this was also error.

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982), held that government officials may be immunized from liability for violating

---

5. While *Bell v. Wolfish* considered a number of conditions of confinement of pretrial detainees, it did not speak specifically about medical treatment or response to the need for medical treatment.

another's constitutional right if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Thus, immunity is available only to a defendant who can show that the law is not clearly established, or, if clearly established, that he reasonably did not know that fact.

*Estelle* and *Wolfish* establish beyond dispute the law governing defendant's duty to Whisenant. The law therefore is "clearly established." Defendants offered no evidence of any reason why they should be excused from knowing the law. It follows that it was inappropriate for the district court to give the immunity instruction.

### IV.

In view of our disposition of this appeal, there is no need for us to discuss Whisenant's other contention. We, of course, recognize that the defendant state officials have appealed, arguing that the district court erred in denying their motions for directed verdicts. Because we conclude that Whisenant's trial was fundamentally flawed by the absence of counsel, we think it inappropriate to rule on these contentions. If Whisenant cannot adduce proof of liability on the part of one or more defendants, this lack may be raised in advance of retrial by motion for summary judgment, after Whisenant has been afforded counsel.

REVERSED AND REMANDED.