**Stephen Joseph GAINES and Martin Earl Hedgpath, Appellants,**

v.

**Gary MAYNARD, Warden, All his Agents, Servants, Representatives and Employees, Including All Guards and other Personnel and all their successors in Office, Appellees.**

Nos. 67752, w/67798.

Supreme Court of Oklahoma.

March 19, 1991.

Martin Earl Hedgpath, Lexington, pro se and for appellant.

Robert H. Henry, Atty. Gen. and Sue Wycoff, Asst. Atty. Gen., Oklahoma City, for appellees.

SUMMERS, Justice.

Plaintiffs are American Indian prisoners seeking a writ of mandamus against their Warden. Boiled down, their suit is for the appointment of legal counsel based on an alleged denial of access to the courts. The District Court of Pittsburg County dismissed the case five days after it was filed. On certiorari to the Court of Appeals, which affirmed, our sole question is whether the trial court's dismissal was proper. We conclude that at least one of the plaintiffs' claims was properly dismissed, but that the pivotal issue of entitlement to court appointed attorney for alleged lack of access to the courts cannot be fully resolved on the record before us. We vacate the opinion of the Court of Appeals, reverse in part and affirm in part the order of the trial court, and remand with instructions.

The plaintiffs filed a lengthy application for writ of mandamus, affidavits *in forma pauperis,* an affidavit by plaintiff Gaines supporting the application,[1] and after the order dismissing the case, a request to amend their application. The application sought the appointment of an attorney to (1) prosecute actions to attack their "convictions", and (2) prosecute yet unfiled civil actions on the behalf of the plaintiffs against the Oklahoma Department of Corrections and various officials thereof. The application did not seek any relief other than the appointment of an attorney.

I. Access to the Courts and Plaintiffs' Application for Mandamus.

The plaintiffs' filings in the trial court are not clear on this point, but in their petitions in error they state that they seek the appointment of counsel "to perfect pending litigation and pending appeals into the United States Supreme Court". The "appeals" to the United States Supreme Court seek review of actions of this Court in three cases and review of Hedgpath's criminal conviction affirmed by the Court of Criminal Appeals in 1979.[2]

A court-appointed attorney to collaterally attack Hedgpath's criminal conviction is not appropriate. Counsel may be appointed to assist indigent defendants in post-conviction proceedings, 22 O.S.1981 § 1082, and for collateral proceedings in capital cases, 22 O.S.Supp.1987 § 1360. However, Hedgpath's application did not seek post-conviction relief, and § 1360 is not implicated. We note that Hedgpath was convicted of Manslaughter in the First Degree, received a sentence of thirty-five years imprisonment, and had counsel for his appeal. *Hedgepath v. State, supra,* at

1. Various filings of the plaintiffs refer to a similar affidavit by plaintiff Hedgpath in support of the application. Many of the arguments in the plaintiffs' brief on appeal purportedly quote from Hedgpath's affidavit. However, the record before the court does not contain such an instrument, and the record on appeal cannot be enlarged beyond that certified by the Clerk of the District Court. *Chamberlin v. Chamberlin,* 720 P.2d 721, 723 (Okla.1986).

2. The three cases of this court are: *Hedgpath v. Dist. Court of Oklahoma County,* No. 61,902 (Okla. January 30, 1986), (unpublished opinion); *Harrod and Hedgpath v. Dept. of Corrections Appellate Review Authority,* No. 66,002 (Okla. April 7, 1986), (dismissed by Order); and *Hedgpath v. Joseph Harp Disciplinary Committee,* No. 66,051 (Okla. March 11, 1986), (dismissed by Order). Hedgpath's criminal conviction is reported at *Hedgepath v. State,* 600 P.2d 348 (Okl. Cr.1979).

note 2. The trial court's denial of a writ of mandamus for a court-appointed attorney to further attack Hedgpath's criminal conviction was correct and is affirmed.

The plaintiffs also requested the appointment of counsel to prosecute appeals of civil cases to the United States Supreme Court and future civil cases against the Department of Corrections and its various officials. The appeals attack the plaintiffs' "convictions" for violating prison rules and regulations, i.e., administrative determinations by prison officials that the plaintiffs were guilty of institutional misconduct. The plaintiffs did not attack the correctness of these institutional misconducts in the mandamus proceeding, and the correctness of those misconduct reports is not before us. The only question before us is whether the plaintiffs are entitled to appointed counsel to assist them with their civil cases.

■ The plaintiffs attempted to show the trial court that they were denied access to the courts, and because of such denial were entitled to appointed counsel. Clearly, a prisoner has a constitutional right of access to the courts, and prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977). *See also, Prock v. Dist. Court of Pittsburg County*, 630 P.2d 772, 775 n. 4 (Okla.1981).

Much of the plaintiffs' paperwork filed in the trial court, as well as in this Court, is simply incoherent. However, the plaintiff's petition contains the following *allegations* in support of their "access" claims: 1. Plaintiffs are barred from adequate and meaningful access to a sufficient law library; 2. Prison law clerks are prevented from acting as an attorney for other inmates; 3. Plaintiffs are denied access to typewriters and means to print appeal documents for appeals to the United States Supreme Court; 4. Plaintiffs are denied free pens and sufficient paper for petitioning the courts; 5. Plaintiffs are denied free mail for administrative appeals and for letters to state and federal officials; 6. Plaintiffs are denied free postage for mail to the courts; 7. Plaintiffs' uncertified mail addressed to the courts has been either misplaced, confiscated, or delayed indefinitely; 8. Prison authorities prohibit non-prisoners from providing postage stamps to the plaintiffs; 9. Prison authorities confiscate the plaintiffs' property as punishment for the plaintiffs' efforts in petitioning the courts; 10. The prison law library is inadequate because it lacks treatises on Indian law, treatises between the United States and the American Indians, and treatises on pleading and appeals; 11. The prison authorities prohibit non-prisoners from sending the plaintiffs copies of treaties between the United States and American Indians; 12. · The prison authorities punish the plaintiffs by a policy concerning indigency; 13. The prison authorities improperly credit funds to the plaintiffs' institutional trust accounts so that the plaintiffs will not be classified as indigent but the money in said accounts is not available for the prisoners to spend for litigation costs; 14. The prison authorities have not established policies for administrative appeals from administrative decisions of prison officials to the district courts; 15. Prison authorities have not provided for administrative evidentiary hearings with a preserved record for later judicial review; 16. Prison authorities have not provided the plaintiffs with a means to appeal a decision of the Oklahoma Supreme Court to the United States Supreme Court; 17. The plaintiffs have a "property right" to a specific amount of time to spend in the law library and such is being denied to them. Some of these allegations clearly require more facts to invoke judicial inquiry, some allegations need further specificity to clarify the nature of the complaint, and some need no further pleading to put the claim at issue.

■ For example, their claim of denial of access to a law library needs additional facts. Prison authorities may deny access to law library when the prisoners receive other adequate legal assistance. *Tous-*

*saint v. Mccarthy,* 801 F.2d 1080, 1110 (9th Cir.1986), *cert. denied,* 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987), (the court explained that if direct access to a library is denied then a state may meet its *Bounds* obligations by various ways, one of which is the use of prison law clerks). The plaintiffs were evidently being assisted by prison law clerks, since their filings in this Court describe a problem they had as to the identity of the clerk who was to make copies of their petition in error eventually filed herein. No inquiry was made as to the assistance of such clerks, and whether such assistance provided the plaintiffs with a reasonably adequate opportunity to present legal claims. *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir.1988), *cert. denied,* 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988), (the relevant inquiry is whether a prisoner has a reasonably adequate opportunity to present his claim).

■ The plaintiffs' application may also be construed as a complaint of *insufficient* access to a law library, as opposed to a *complete denial* of such access. If so, this claim needs clarification, since the legal analysis of such a claim is different from one claiming a complete denial of library access. *Sands v. Lewis,* 886 F.2d 1166, 1170–1171 (9th Cir.1989). Restricted access to legal materials in a reasonable manner may be constitutionally permissible in light of legitimate security considerations. *Oltarzewski v. Ruggiero,* 830 F.2d 136, 138 (9th Cir.1987); *Caldwell v. Miller,* 790 F.2d 589, 606 (7th Cir.1986). *See also, Walker v. Mintzes,* 771 F.2d 920, 932 (6th Cir.1985) (restricted access to a law library is not per se denial of access to the courts); *Twyman v. Crisp,* 584 F.2d 352, 357 (10th Cir.1978), (same). In order to state a claim for relief a complaint of limited access to a library must be accompanied with (1) a showing of prejudice or (2) an actual injury to the prisoner's attempts at litigation. In *Magee v. Waters,* 810 F.2d 451, 452 (4th Cir.1987), the Court upheld summary judgment against a prisoner's claim of limited access to a jail library when there was no actual injury or specific harm caused from the limited access.

■ On the other hand, the plaintiffs' complaint of seizure of property as a punishment for their conduct in filing lawsuits needs no further explanation by the plaintiffs to invoke judicial inquiry. Generally, a prison official may not retaliate against a prisoner for filing lawsuits. *McDonald v. Hall,* 610 F.2d 16, 18 (1st Cir.1979); *Milhouse v. Carlson,* 652 F.2d 371, 373–374 (3d Cir.1981); *Russell v. Oliver,* 552 F.2d 115, 116 (4th Cir.1977); *Matzker v. Herr,* 748 F.2d 1142, 1150–1151 (7th Cir.1984); *Sanders v. St. Louis,* 724 F.2d 665, 666 (8th Cir.1983); *Bridges v. Russell,* 757 F.2d 1155 (11th Cir.1985). Specifically, prison officials may not confiscate property in retaliation for lawsuits filed by a prisoner. *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986).

This application for mandamus, being a "special statutory proceeding", is not governed by the Oklahoma Pleading Code. Committee Comment to 12 O.S.1985 Supp. § 2001. Whether the plaintiffs' lack of factual specificity is due to their non-access to legal materials, the non-existence of facts necessary to show a meritorious claim, or something else, is not apparent from the face of the record. Thus we find that this case requires remanding to the trial court to give the plaintiffs an opportunity to plead with more specificity the nature of their claims of denial of access to the courts, subject, however, to part II herein.

## II. Mootness.

We note that the plaintiffs appear to now be located at a prison different than when their application for mandamus was filed. Their filings before this Court show access to a considerable amount of legal authority. Their typed appellate brief is 34 pages long, and contains a 10 page index of authority citing opinions of the United States Supreme Court, federal circuit courts, federal district courts, Oklahoma Supreme Court, federal and state statutes, provi-

sions of the federal and state constitutions, and four treaties between the United States and American Indians. Courts have examined prisoner filings to determine if they demonstrate access to legal materials. *See, Sands v. Lewis, supra, DeMallory v. Cullen,* 855 F.2d 442, 449 (7th Cir.1988), and *Twyman v. Crisp, supra.* In *Twyman* a 38 page trial court response by prisoner was noted. In *Mann v. Smith,* 796 F.2d 79, 84 (5th Cir.1980), prisoner's action in filing a legally sufficient complaint showed access to the courts. In *Wanninger v. Davenport,* 697 F.2d 992, 994 (11th Cir. 1983), the court stated that "appellant's complaint in the federal district court and his pro se brief on appeal both demonstrate that he has had access to the courts and a considerable amount of legal material." However, the mere filing of a complaint is not dispositive of the access issue. *Morrow v. Harwell,* 768 F.2d 619, 623 (5th Cir.1985). The appellants' brief raises the issue of whether their claims of non-access to legal materials, pen and paper, and a typewriter are now moot.

 The plaintiffs' claim to an attorney appointed at the expense of the Department of Corrections is predicated upon non-access to a law library or persons trained in the law. In a mandamus proceeding a plaintiff must have a clear legal right to the remedy sought. *Oklahoma Gas & Electric Co. v. Dist. Court for the Fifteenth Judicial Dist.,* 784 P.2d 61, 63 (Okla.1989). A plaintiff will not have a clear legal right to the requested relief if such request has become moot. *See, State ex rel. St. Louis–San Francisco Ry. Co. v. Boyett,* 183 Okl. 49, 80 P.2d 201, 205 (1938), *See also, Rogers v. Excise Bd. of Greer County,* 701 P.2d 754, 761 (Okla.1984). However, the plaintiffs' access claims are not moot if they are capable of repetition, and yet evading review. *In re D.B.W.,* 616 P.2d 1149, 1151 (Okla.1980); *B.J.B. v. Dist. Court of Oklahoma County,* 611 P.2d 249, 250 (Okla.1980). The trial court is the proper forum to determine whether the plaintiffs' claims are now moot.

 The plaintiffs' claims to an attorney are also predicated upon the absence of a less expensive and alternate remedy. A writ will not be granted if such would create confusion with the fiscal affairs of a governmental subdivision of the state. *State ex rel. Cartwright v. Dunbar,* 618 P.2d 900, 913–914 (Okla.1980); *State ex rel. St. Louis–San Francisco Ry. Co. v. Boyett,* 80 P.2d at 205–206. *See also, Abel v. Madden,* 738 P.2d 1340, 1343 n. 4 (Okla. 1987) and the cases cited therein. The Oklahoma Department of Corrections has apparently attempted to meet its obligations under *Bounds* by providing prison law libraries and prison law clerks. If the plaintiffs are denied reasonably adequate access to the courts then the appropriate remedy may merely be a slight alteration of the system already in place. Such a remedy might be fashioned by taking into consideration legitimate penological goals such as institutional security and providing court access to the greatest number of prisoners. A remedy providing access to the courts would effectively moot any claim to an appointed attorney. The plaintiffs do not have a clear legal right to the appointment of counsel if they are afforded access to the courts by a constitutionally adequate method. *See, United States v. Wilson,* 690 F.2d 1267, 1271 (9th Cir.1982), *cert. denied,* 464 U.S. 867, 104 S.Ct. 205, 78 L.Ed.2d 178 (1983), where it was held that a prisoner may not reject a constitutionally sufficient means of access and insist on a method of his or her choosing. This also is a matter which is fact-dependent and left for consideration of the trial court.

The opinion of the Court of Appeals is vacated, the order of the trial court is affirmed in part and reversed in part, and the cause is remanded for proceedings consistent with this opinion.

LAVENDER, DOOLIN and ALMA WILSON, JJ., and JOHNSON, Special Judge (appointed to take place of KAUGER, J. who recused), concur.

OPALA, C.J., concurs in part, dissents in part.

**678**

HODGES, V.C.J., and SIMMS and HARGRAVE, JJ., dissent.

OPALA, Chief Justice, concurring in part; dissenting in part.

I accede to that part of today's pronouncement which defers the "fact-dependent" mootness issue to the trial court for determination. The court also reverses the trial court's dismissal of the indigent plaintiffs' (prisoners') quest for assistance of counsel to redress certain transgressions alleged to have been committed by prison officials. I agree with the court's conclusion that the allegations below lack the specificity necessary for granting extraordinary relief. Unlike the court, instead of remanding the two consolidated cases to give the plaintiffs an opportunity to clarify "the nature of their claims of denial of access to the courts," I would direct today that the trial court conduct an inquiry into the existence of "special circumstances" which might entitle the prisoners to an appointment of legal counsel under the due process [1] and open access-to-court [2] clauses of the Oklahoma constitution, as well as under the Due Process Clause of the Fourteenth Amendment. [3]

The indigent plaintiffs seek the appointment of legal counsel to prosecute civil actions against prison officials for, among other things, wrongful confiscation of property. The event is alleged to have contributed to plaintiffs' denial of access to the courts. Assistance of counsel is constitutionally mandated from the first critical stage of a criminal proceeding through the initial appeal. [4] This is the so-called *per se* rule. It is inapplicable here. "Neither the Sixth–Amendment nor the Fourteenth–Amendment jurisprudence of the Federal Supreme Court makes a State responsible, under a *per se* rule, for providing counsel to indigent prisoners such as these plaintiffs, who make confinement-related complaints of the correctional authority's conduct that oversteps permissible bounds." [5] I would hence fashion today a new state fundamental-law norm for special or exceptional circumstances—a rule which would engender principles very similar to those applied by the U.S. Supreme Court in *Vitek v. Jones*. [6]

In *Vitek* the Court held that the involuntary transfer of a state prisoner to a mental hospital "constitute[s] the kind of deprivation[ ] of liberty that requires procedural protections." [7] Those protections *include the assistance of counsel* for inmates whom the state seeks to treat involuntarily as mentally ill. [8] Although the special circumstances rule for providing counsel is restricted to matters involving a *liberty* interest, and these prisoners' complaint here is premised in part upon confiscation of *property*, I would nonetheless afford the plaintiffs a post-remand special-circumstances inquiry because the alleged violations of property rights are so inextricably intertwined with their confinement-related restrictions of access to court that a liberty

1. Art. 2 § 7, Okl.Const., provides:

 "No person shall be deprived of life, liberty, or property, without due process of law."

2. Art. 2 § 6, Okl.Const., provides:

 "The courts of justice of the State *shall be open to every person,* and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice *shall be administered without sale, denial, delay, or prejudice."* (Emphasis added.)

3. The pertinent provisions of the Fourteenth Amendment to the U.S. Constitution are:

 "* * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of* law; nor deny to any person within its jurisdiction the equal protection of the laws. "* * *" (Emphasis added.)

4. *Hamilton v. State of Alabama,* 368 U.S. 52, 54, 82 S.Ct. 157, 158–159, 7 L.Ed.2d 114 (1961); *Kirby v. Illinois,* 406 U.S. 682, 689–690, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Ross v. Moffitt,* 417 U.S. 600, 610–612, 94 S.Ct. 2437, 2443–2445, 41 L.Ed.2d 341 (1974).

5. *Cumbey v. State,* Okl., 699 P.2d 1094, 1099 (1985) (Opala, J., dissenting).

6. 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

7. *Vitek v. Jones, supra* note 6, 445 U.S. at 494, 100 S.Ct. at 1264.

8. *Vitek v. Jones, supra* note 6, 445 U.S. at 496–497, 100 S.Ct. at 1265–1266.

interest must necessarily be deemed to stand implicated. The state would not have had ready access to the plaintiffs' property had they not been incarcerated.[9]

Special—or exceptional-circumstance inquiries have been ordered for federal-court litigants in forma pauperis who requested counsel pursuant to 28 U.S.C. § 1915(d).[10] The existence of circumstances calling for provision of counsel turns on (a) "the type and complexity of the case" and (b) "the abilities of the individuals bringing it."[11] For example, appointment of counsel was found to be warranted in a case where the *pro se* litigant had a colorable claim but lacked the capacity or skills adequately to present it.[12]

Under the standards I counsel today and those advanced by me in *Cumbey*,[13] once a lawyer is appointed, he (or she) may be required to provide services without compensation as part of the lawyer's annual public service duty.[14] If the trial judge should on remand of this cause determine that counsel's services are constitutionally necessary, and if either prisoner should ultimately prove to be successful, counsel fees might be awardable against the state.[15] Generally, though, in meritorious cases I would opt for the immediate appointment of counsel whose compensation

**9.** The following allegations, which the court's opinion lists, support my conclusion that the prisoners' *liberty* interest in gaining meaningful access to the courts is necessarily implicated by their *property*-related complaints: 1) "prison authorities confiscate the plaintiffs' property as punishment for the plaintiffs' efforts in petitioning the courts," 2) "prison authorities improperly credit funds to the plaintiffs' institutional trust accounts so that the plaintiffs will not be classified as indigent but the money in said accounts is not available for the prisoners to spend for litigation costs," and 3) "the plaintiffs have a 'property right' to a specific amount of time to spend in the law library and such is being denied to them."

**10.** The terms of 28 U.S.C. § 1915(d) provide: "(d) *The court may request an attorney to represent any such person unable to employ counsel* and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." (Emphasis added.)

**11.** *Branch v. Cole,* 686 F.2d 264, 266 (5th Cir. 1982).

**12.** *Gordon v. Leeke,* 574 F.2d 1147, 1153 (4th Cir.1978). *See also Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984), where the court held that the denial of the arrestee-plaintiff's request for counsel deprived him of "a fundamentally fair trial." In *Whisenant,* the special circumstances included 1) "a colorable claim" based on his custodians' "deliberate indifference to his serious medical needs," 2) a plaintiff who was "ill-equipped to represent himself or to litigate a claim of this nature" and 3) "sharp conflicts" between the parties' versions of the events, making the case's outcome largely dependent upon a test of credibility.

**13.** See *supra* note 5.

**14.** For an explanation of a lawyer's public service duty *see State v. Lynch,* Okl., 796 P.2d 1150, 1170 n. 31 (1990) (Opala, V.C.J., concurring in part and dissenting in part). *See also Branch v. Cole, supra* note 11 at 266–267, where the court noted that

"[a]ttorneys admitted to practice in the federal courts of this circuit *are or ought to be bound in the discharge of their duties as court officers by ethical precepts* similar to those set out in the American Bar Association's Model Code of Professional Responsibility: '... The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer.... (EC 2–25) * * *'" (Emphasis added.)

**15.** The pertinent terms of 12 O.S.Supp.1987 § 941 provide:
"A. The *defendant in any civil action* brought in any court of this state *by any state agency, board, commission, department, authority or bureau* authorized to make rules or formulate orders *shall be entitled to recover* against such state entity *court costs, witness fees and reasonable attorney fees* if the court determines that the action was brought without reasonable basis or is frivolous. * * *
B. The *respondent in any proceeding* brought before any state administrative tribunal by any state agency, board, commission, department, authority or bureau authorized to make rules or formulate orders *shall be entitled to recover* against such state entity *court costs, witness fees and reasonable attorney fees* if the tribunal or a court of proper jurisdiction determines that the proceeding was brought without reasonable basis or is frivolous; provided, however, if the tribunal is required by law to act upon complaints and determines that the complaint had no reasonable basis or is frivolous, the tribunal may assess the respondent's costs, witness fees and reasonable attorney fees against the complainant. * * *'" (Emphasis added.)
*See Tulsa Tribune v. Oklahoma Tax Com'n,* Okl., 768 P.2d 891, 897–898 n. 10 (1989) (Opala, J., dissenting).

source would be ascertained at the litigation's end, just as in criminal cases where *both the quantum and source of compensation is determined after services have been completed.* In the event a prisoner's civil action is found to have been commenced in *bad faith,* he (or she) could be ordered to pay the court-appointed lawyer out of prison funds, if necessary.[16]

In sum, I would remand the two cases now before the court for a special—or exceptional-circumstances inquest in an effort to ascertain whether court-assigned counsel for the indigent plaintiffs is either their state or federal constitutional due under Art. 2 §§ 6 and 7, Okl.Const., or under the Fourteenth Amendment's Due Process Clause.

SIMMS, Justice, dissenting:

I would deny certiorari as improvidently granted. The trial court and the Court of Appeals correctly found that these petitioners have not alleged any breach of a legal duty which would entitle them to a writ of mandamus.

I am authorized to state that Vice Chief Justice HODGES and Justice HARGRAVE join with me in the views expressed above.

---

**16.** See 23 O.S.Supp.1986 § 103, whose terms provide:

"In any action for damages for personal injury except injury resulting in death, or *in any action for damages to personal rights* the court *shall,* subsequent to adjudication on the merits and upon motion of the prevailing party, *determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith,* was *not well grounded in*

*fact,* or was *unwarranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law. Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000.00) for reasonable costs, including attorneys fees, incurred with respect to such claim or defense." (Emphasis added.)