**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 16-7512**

—————————

STEVEN LEON BANKS,

Plaintiff − Appellant,

v.

VINCENT MYRON GORE, Head - Physician; A. SMITH, Nurse; NURSE KEYS,

Defendants – Appellees,

and

NURSE GOODE; DR. ABAGUTTA; NURSE GRIFFITH; ARMOR HEALTH CARE; PTX DIALYSIS, Dialysis - Provider,

Defendants.

—————————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Claude M. Hilton, Senior District Judge.  (1:14-cv-00205-CMH-JFA)

—————————

Argued:  March 21, 2018                          Decided:  June 13, 2018

—————————

Before GREGORY, Chief Judge, and DIAZ and HARRIS, Circuit Judges.

—————————

Affirmed and remanded with instructions by unpublished opinion.  Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Harris joined.

—————————

**ARGUED:**  Jaden Rhea, WEST VIRGINIA UNIVERSITY COLLEGE OF LAW, Morgantown, West Virginia, for Appellant.  Edward J. McNelis, III, SANDS

ANDERSON, PC, Richmond, Virginia, for Appellees. **ON BRIEF:** Lawrence D. Rosenberg, JONES DAY, Washington, D.C., for Appellant. Elizabeth M. Muldowney, SANDS ANDERSON, PC, Richmond, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Virginia inmate Steven L. Banks filed suit against the medical director of the Greensville Correctional Center and the nurse manager of the prison infirmary, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment and medical malpractice under Virginia state law. The district court granted defendants' motion for summary judgment because (1) Banks failed to exhaust his administrative remedies and, in any event, (2) the evidence demonstrates that the defendants did not violate Banks's Eighth Amendment rights. Banks appeals.

We affirm on the merits of Banks's Eighth Amendment claims without deciding if Banks properly exhausted his administrative remedies. But we remand the case to allow the district court to clarify its disposition of Banks's state law medical malpractice claims.

I.

A.

Banks is incarcerated at the Greensville Correctional Center in Jarratt, Virginia and suffers from numerous health conditions, including end-stage renal disease, diabetes, diabetic neuropathy with lower left extremity motor dysfunction and instability, coronary artery disease with congestive heart failure, hepatitis C, bile-duct obstructions, and high blood pressure. In February 2014, he filed a pro se complaint under 42 U.S.C § 1983 against two healthcare service providers and Dr. Vincent Gore, the prison's medical director, alleging they were deliberately indifferent to his serious medical needs in violation

of the Eighth Amendment. The court dismissed Banks's claims against the two providers and instructed him to particularize and amend his claims against Gore.

Complying with the court order, Banks filed an amended complaint that named Gore and the prison infirmary's nurse manager, Angela Smith, as defendants. Gore and Smith moved to dismiss the complaint for failure to state a claim. In response, Banks again moved to amend and also requested appointment of counsel.

The district court denied Banks's motion to appoint counsel, but allowed him to file a second amended complaint. The court instructed Banks on how to particularize and amend his complaint and cautioned that "this second amended complaint will supplant **all** previous complaints and will serve as the **sole** operative complaint in this action." J.A. 153.

Banks's Second Amended Complaint articulates two Eighth Amendment deliberate indifference claims and two state medical malpractice claims. The Eighth Amendment claims allege that Gore was deliberately indifferent to Banks's medical needs by (1) denying three different doctors' requests for Banks to receive an off-site neurologist consult to treat his concussion symptoms and (2) denying Banks's request for a new medication called Harvoni to treat his hepatitis C. The state law claims allege that (1) Gore committed medical malpractice because he refused to approve a surgical procedure to have kidney stones removed from Banks's bile duct, and (2) Smith committed medical malpractice when she prematurely ended Banks's dialysis treatment session, causing Banks to become very ill.

4

Gore and Smith filed a motion for summary judgment, along with supporting exhibits and affidavits. Banks was fully informed of his right to respond to the motion in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), but he failed to do so.[1] The district court granted defendants' motion for summary judgment, holding that Banks did not exhaust his administrative remedies for any of his federal claims as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). It further held that the pleadings, affidavits, and exhibits demonstrate that neither defendant violated Banks's Eighth Amendment rights. The court's opinion did not address Banks's state law malpractice claims.

On appeal, Banks filed an informal brief pursuant to Local Rule 34(b), wherein he contested the dismissal of his claims and also alleged that the district court erred in denying his motions for appointment of counsel. We then appointed counsel to file a formal brief. That brief raises a host of issues that we decline to consider because they were not before the district court. The brief also objects to the district court's dismissal of Banks's claims that (1) Gore was deliberately indifferent to Banks's serious medical needs when he repeatedly denied Banks a neurologist consult, and (2) Smith was deliberately indifferent to Banks's serious medical needs when she ended Banks's dialysis treatment session early.[2]

---

[1] Banks continued to seek appointment of counsel but the district court denied his requests.

[2] Although the Second Amended Complaint characterizes the claim against Smith as a state law malpractice claim, we liberally construe pro se complaints, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and thus treat Banks's allegation against Smith as both a deliberate indifference Eighth Amendment claim and a medical malpractice claim.

5

The formal brief makes no mention of Banks's other claims against Gore. Nor does it allege that the district court erred in denying Banks's motions for appointment of counsel. "[W]e treat the formal brief as definitive of the issues for review and, applying the normal rule of waiver, consider only those issues, unless an inspection of the record indicates that failure to consider other issues might result in grave injustice." *Slezak v. Evatt*, 21 F.3d 590, 593 n.2 (4th Cir. 1994).

We find no grave injustice in counsel's waiver of these claims. The uncontested evidence establishes that (1) Banks did not have a medical need to receive Harvoni for his hepatitis C, (2) Banks was treated for a bile duct obstruction, and (3) Gore never denied surgery for Banks's bile duct obstruction. And as we explain later, we also find no grave injustice in counsel's waiver of the claim that the district court erred in denying Banks's motions for appointment of counsel.

Thus, our review on the merits is limited to the two Eighth Amendment claims properly preserved on appeal, although we also briefly address the district court's failure to dispose of Banks's state law medical malpractice claims.

B.

Banks failed to present evidence in opposition to defendants' motion for summary judgment and accompanying affidavits and exhibits. As a result, the facts we summarize are undisputed.

*Deliberate Indifference Claim Against Gore*

In April 2012, Banks slipped and fell on a wet floor in the Greensville Correctional Center and injured his head. Five days later, after complaining of blurry vision, dizziness,

6

and chronic head pain, Banks was taken to the hospital where he was told he had a severe concussion. Banks filed a number of grievances about improper medical treatment of his concussion symptoms throughout the summer of 2012.

Banks's medical care was predominantly handled by his primary care providers, but Gore was responsible for approving requests for specialist consultations and medical procedures. A year and a half after Banks's fall, in January 2014, a primary care provider requested a neurology consult for Banks. At the time, Banks reported left leg weakness, headache, dizziness, and lower back pain. His neurological evaluation was within normal limits and spinal x-rays showed normal alignment with anterior wedging.

Gore deferred the primary care provider's request and recommended, instead, that Banks first be seen in the clinic for six months. Gore believed more information was needed, especially because Banks was on medication that could cause headaches and dizziness. Further, Gore thought there was no urgent need for a neurology consult because this was the first time he was asked to approve such a consult and it was a year and a half after Banks's initial head injury. The primary care provider was free to submit further information for Gore to consider, either then or after monitoring Banks in the clinic.

*Deliberate Indifference Claim Against Smith*

On June 14, 2013, Banks was receiving dialysis treatment in the medical housing unit of the Greensville Correctional Center. Around three hours after he started his treatment session, the water system on his dialysis machine broke down and he was removed from his treatment about thirty-six minutes early. Banks claims he became very ill as a result of the premature termination. At the time, Smith was employed as the

7

infirmary nurse manager by a company called Corizon. She did not have authority to end Banks's dialysis treatment early, nor did she. The nurses who managed patients' dialysis treatments were employed by a different company.

## II.

### A.

We review a district court's grant of summary judgment de novo. *Sempione v. Provident Bank of Md.*, 75 F.3d 951, 954 (4th Cir. 1996). To obtain summary judgment, the movant must demonstrate "there is no genuine dispute as to any material fact and [that he] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden then shifts to the nonmoving party to point out specific facts that create disputed factual issues. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must "go beyond the pleadings" and rely on some form of evidence, including affidavits, to demonstrate that a genuine issue of material fact exists. *M & M Med. Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992). In deciding a motion for summary judgment, a district court should draw all facts and inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. It applies to "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In order to establish an Eighth Amendment violation, a prisoner must prove: (1) "the deprivation of a basic human need was objectively sufficiently serious," and (2) "subjectively the officials acted with a

sufficiently culpable state of mind." *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997) (internal quotation marks, alterations, and emphasis omitted).

To satisfy the first element, a prisoner must "produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," or "demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.*

To satisfy the second element, a prisoner must prove at least deliberate indifference. "Deliberate indifference is more than mere negligence." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal quotation marks omitted). It "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." *Rish*, 131 F.3d at 1096. "A prison official is not liable if he 'knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). In other words, "general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Id.* at 168.

We conclude that Gore was not deliberately indifferent to Banks's medical needs. When, as here, there is no direct evidence that the prison official actually knew and disregarded a serious risk of harm, the risk must be so obvious that actual knowledge can be inferred from its mere existence. *See Rish*, 131 F.3d at 1099–1100. That is not the case here.

9

Although Banks alleges that Gore denied three different primary care providers' requests for a neurology consult, the uncontested record evidence shows otherwise. Gore submitted a sworn affidavit in which he explained that he received a single request for a neurology consult—a year and a half after Banks's original fall. And Gore did not deny the request; he deferred it and suggested that Banks first be monitored in the clinic for six months. Gore did so because Banks was on medication that caused headaches and dizziness; his neurological evaluation was within normal limits; his spinal x-rays showed normal alignment with anterior wedging; and Gore saw no urgent need for a neurology consult given that Banks had injured his head over a year and a half earlier.

Mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). We see no evidence that Gore deviated from the accepted standard of care, but even if he did, that would not be sufficient to clear the "high bar" of a constitutional claim. *See id.* at 178–79. Ultimately, Gore's undisputed evidence showed that he was in no way deliberately indifferent to Banks's medical needs, and Banks failed to "go beyond the pleadings" to create a genuine dispute of a material fact.

The district court also correctly dismissed Banks's Eighth Amendment claim against Smith because there is undisputed evidence that she had nothing to do with the early termination of Banks's dialysis treatment. Smith's sworn affidavit states that she did not terminate Banks's dialysis treatment early and that other nurses, employed by a

different company, managed patients' dialysis treatments. Absent record evidence that Smith was personally involved in the alleged deprivation of a constitutional right, she is entitled to summary judgment. *See Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990).

Because Banks's Eighth Amendment claims fail on the merits, we need not consider whether Banks administratively exhausted the claims. Banks argues that the district court's alternative holding—that defendants produced sufficient evidence to merit summary judgment—was mere dicta because it was made after the district court determined that it had no jurisdiction. This is wrong. The Prison Litigation Reform Act's exhaustion requirements are mandatory but not jurisdictional. Thus, a district court can dismiss a case for lack of merit without deciding whether the claims were administratively exhausted. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006).

B.

Banks also alleges—in his informal brief—that the district court erred in denying his motions to appoint him counsel. But Banks's formal brief doesn't raise the issue, so it's waived unless the record shows that failure to consider the issue might result in grave injustice. *See Slezak*, 21 F.3d at 593 n.2. We briefly address why no such injustice would result here.

The district court may appoint counsel for indigent plaintiffs in civil cases. *See* 28 U.S.C. § 1915(e)(1). "The power to appoint is a discretionary one, but it is an abuse of discretion to decline to appoint counsel where the case of an indigent plaintiff presents exceptional circumstances." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). "The existence of such circumstances will turn on the quality of two basic factors—the type and

11

complexity of the case, and the abilities of the individuals bringing it." *Id.* "If it is apparent to the district court that a pro se litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." *Id.*

Banks never asserted in his numerous motions for appointment of counsel that he was unable to represent himself due to his medical conditions. Rather, Banks contended that (1) his imprisonment limited his ability to litigate what is a complex case involving significant research and investigation, (2) a trial in the case would likely involve conflicting testimony and appointed counsel would be better at presenting evidence and cross-examining witnesses, and (3) he had made repeated efforts to obtain a lawyer.

But Banks's inexperience with the law and his prisoner status do not constitute an "exceptional circumstance," especially during the very early stages of litigation. *See James v. Eli*, No. 15-3034, 2018 WL 2035301, at \*4 (7th Cir. May 2, 2018) (noting "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation"). If Banks truly had reason to believe that three different providers recommended that he receive a neurological consult or that Nurse Smith was directly responsible for prematurely ending his dialysis treatment, then Banks might well have survived defendants' motion for summary judgment by submitting affidavits contesting the defendants' version of events. And we know Banks is capable of presenting such evidence because he attached a handful of affidavits to his original complaint.

Moreover, the record does not suggest that Banks's claims are colorable. This case stands in stark contrast to *Whisenant*, in which a district court did abuse its discretion by not appointing counsel to a plaintiff-prisoner with an Eighth Amendment deliberate

12

indifference claim. There, police arrested Whisenant for murder in a hospital emergency room, where he was seeking treatment for injuries sustained in a motorcycle accident three days earlier. We concluded that Whisenant had a colorable claim of deliberate indifference because the evidence showed that after being booked in the county jail, he complained of oral and rectal bleeding, but did not receive adequate medical treatment until at least seventeen hours later, "when immediate life-sustaining measures were required." 739 F.2d at 163. We further held that Whisenant was ill-equipped to represent himself at trial because he was uneducated generally and totally uneducated in legal matters; he could not leave the prison to interview key witnesses; and his version of events was in sharp conflict with that of the defendants, so the case depended largely on the credibility of witnesses at trial. *Id.*

Banks, on the other hand, presented no evidence of an Eighth Amendment violation, was in the early stages of litigation—not at trial, and was capable of opposing a motion for summary judgment. We therefore find no grave injustice in the district court's refusal to appoint counsel.

## C.

Finally, we address whether the district court properly disposed of Banks's state law medical malpractice claims. The defendants' motion for summary judgment sought dismissal of Banks's Second Amended Complaint, with or without prejudice. The district

court granted the motion and instructed the Clerk to enter final judgment.[3] The district court's memorandum opinion, however, does not address Banks's state law claims, and neither the opinion nor the order specifies whether the court dismissed the state law claims with or without prejudice.

Generally, when a district court dismisses all federal claims in the early stages of litigation, it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

A district court does have discretion to continue to exercise supplemental jurisdiction over pendent state law claims, s*ee* 28 U.S.C. § 1367(c)(3), but a court's decision should be based on factors like convenience and fairness to the parties. *See Shanaghan v. Cahill*, 58 F.3d 106, 112 (4th Cir. 1995). Further, if a court decides to dismiss

---

[3] We ordered supplemental briefing on whether the district court's judgment was "final" under 28 U.S.C. § 1291 for purposes of our jurisdiction. We are satisfied that it was a final, appealable order because even though the district court failed to address the state law claims, the language used in its order was "calculated to conclude all the claims before the district court" and "the district court obviously was not trying to adjudicate fewer than all the pleaded claims." *See Martin v. Duffy,* 858 F.3d 239, 246–47 (4th Cir. 2017).

pendent state law claims on their merits, it should state its reasons. *See* Fed. R. Civ. P. 56(a).

Here, the district court said nothing about the state law claims. We think it likely that the court intended to dismiss them without prejudice to refiling in state court. But rather than guess, we remand for the limited purpose of having the district court clarify its intentions regarding the claims. *See, e.g.*, *Vibe Micro, Inc. v. Shabenets*, 878 F.3d 1291, 1296–97 (11th Cir. 2018) (remanding on similar grounds).

*AFFIRMED AND REMANDED*
*WITH INSTRUCTIONS*