**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1587

PAUL SCINTO, SR.,

Plaintiff - Appellant,

v.

WARDEN PATRICIA STANSBERRY, FCI - Butner-Low; SUSAN
MCCLINTOCK, Camp Administrator, FPC-Butner; R. HOLT, Senior
Officer Specialist; DR. PHILLIPS; OFFICER COORS,

Defendants - Appellees,

and

FEDERAL BUREAU OF PRISONS, a division of the U.S. Department
of Justice; HARLEY G. LAPPIN, Director, Bureau of Prisons;
KIM WHITE, Mid Atlantic Regional Director,

Defendants.

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh. James C. Dever III,
Chief District Judge. (5:10-ct-03165-D)

Argued: September 23, 2016          Decided: November 4, 2016

Before NIEMEYER, MOTZ, and WYNN, Circuit Judges.

Affirmed in part and reversed in part by published opinion.
Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge
Motz joined.

**ARGUED**: Adam H. Farra, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, D.C., for Appellant. Robert J. Dodson, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees. **ON BRIEF**: Paul J. Zidlicky, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. John Stuart Bruce, Acting United States Attorney, G. Norman Acker, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.

---

WYNN, Circuit Judge:

Plaintiff Paul Scinto, Sr. ("Plaintiff"), a former federal prisoner, sued several federal prison officials pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging a number of violations under the Fourth, Fifth, Eighth, and Fourteenth Amendments. Defendants are Dr. Derick Phillip ("Dr. Phillip"); Patricia Stansberry, former Federal Prison Camp Butner Warden ("Warden Stansberry"); and Susan McClintock, former Butner Camp Administrator ("Administrator McClintock"). Collectively, these Defendants successfully moved for summary judgment on all of Plaintiff's claims.

On appeal, Plaintiff limits his arguments to the district court's dismissal of three claims that Defendants were deliberately indifferent to his medical needs, in violation of the Eighth Amendment. Plaintiff argues that, in dismissing these claims, the district court made credibility determinations and weighed the parties' evidence, thus violating the summary judgment standard.

For the reasons that follow, we reverse the district court's disposition of the two Eighth Amendment claims against Dr. Phillip and Administrator McClintock but affirm its resolution of the claim against Warden Stansberry.

3

I.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "proscribes more than physically barbarous punishments." Estelle v. Gamble, 429 U.S. 97, 102 (1976). It also encompasses "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). In particular, the Eighth Amendment imposes a duty on prison officials to "provide humane conditions of confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To that end, a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104 (internal quotation marks and citation omitted). Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in Farmer v. Brennan, 511 U.S. 825 (1994).

First, Farmer's "objective" prong requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To be

4

"sufficiently serious," the deprivation must be "extreme"--meaning that it poses "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted). In medical needs cases, like the case at bar, the Farmer test requires plaintiffs to demonstrate officials' deliberate indifference to a "serious" medical need that has either "been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Second, under Farmer's "subjective" prong, plaintiffs must show that prison officials acted with a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834 (internal quotation marks omitted) (quoting Wilson, 501 U.S. at 297). In conditions of confinement cases, the requisite state of mind is deliberate indifference. Id. To prove deliberate indifference, plaintiffs must show that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 837. Put differently, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[ew]

5

th[at] inference." Id. (emphasis added). Deliberate indifference is "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." Id. at 835. It "lies somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." Brice v. Va. Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (citing Farmer, 511 U.S. at 835). Under this standard, mere "[d]isagreements between an inmate and a physician over the inmate's proper medical care" are not actionable absent exceptional circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970)).

In deliberate indifference to medical needs cases, Farmer's subjective prong requires proof of the official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by [the official's] action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Makdessi v.

6

<u>Fields</u>, 789 F.3d 126, 133 (4th Cir. 2015) (quoting <u>Farmer</u>, 511 U.S. at 842).

A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting <u>Farmer</u>, 511 U.S. at 842). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." <u>Miltier v. Beorn</u>, 896 F.2d 848, 853 (4th Cir. 1990), <u>overruled in part on other grounds by</u> <u>Farmer</u>, 511 U.S. at 837. However, even officials who acted with deliberate indifference may be "free from liability if they responded reasonably to the risk." <u>Farmer</u>, 511 U.S. at 844.

7

II.

Plaintiff entered federal custody at Federal Prison Camp Seymour Johnson in October 2002.[1] At that time, he suffered from myriad medical conditions, including hepatitis C, a knee infection, insulin-dependent diabetes, and high blood pressure. In the years that followed, Plaintiff was confined in various federal prison facilities. In particular, from June 2005 to March 2006, Plaintiff was incarcerated at Federal Prison Camp Butner in Butner, North Carolina. During that time, several incidents purportedly occurred and gave rise to a number of constitutional claims. Following a circuitous journey through the federal judicial system, the present appeal addresses only a subset of these claims.

On February 28, 2008, Plaintiff filed a Bivens action pro se in the United States District Court for the District of Columbia. Plaintiff's original complaint sought relief for alleged violations of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments, naming as defendants various federal officials, including the Bureau of Prisons, then-Bureau Director Harley Lappin, Regional Director Kim White, Warden

---

[1] After pleading guilty to maintaining a place for the purpose of manufacturing, distributing, or using phencyclidine, Plaintiff was sentenced to 78 months' imprisonment. The nature of his conviction and sentence are irrelevant to this appeal.

Stansberry, Administrator McClintock, and Butner Correctional Officer Richard Holt ("Officer Holt"). After dismissing a number of these claims on jurisdictional and sovereign immunity grounds, the district court transferred Plaintiff's remaining claims against Warden Stansberry, Administrator McClintock, and Officer Holt to the United States District Court for the Eastern District of North Carolina. Scinto v. Fed. Bureau of Prisons, 608 F. Supp. 2d 4, 10 (D.D.C.), aff'd, 352 F. App'x 448 (D.C. Cir. 2009). Following a second appeal in this Circuit, Plaintiff successfully amended his complaint to include additional Eighth Amendment claims against defendants Dr. Phillip and Butner Correctional Officer Lawrence Coor ("Officer Coor"). Scinto v. Stansberry, 507 F. App'x 311 (4th Cir. 2013) (per curiam). Cross-motions for summary judgment followed and, on September 9, 2014, the district court denied Plaintiff's motion for summary judgment and granted summary judgment to the defendants on each of Plaintiff's claims.

Plaintiff appeals only three of the claims dismissed on summary judgment, each arising under the Eighth Amendment. These include: (1) Plaintiff's claim against Dr. Phillip for allegedly denying Plaintiff insulin to treat his diabetes; (2) Plaintiff's claims against Dr. Phillip and Administrator McClintock for allegedly failing to provide aid in a medical emergency; and (3) Plaintiff's claim against Warden Stansberry

9

for her alleged failure to provide Plaintiff with a diabetic diet during Plaintiff's incarceration in administrative segregation (the "Special Housing Unit"). We address the facts relevant to each claim below.

## III.

"We review the district court's grant of summary judgment de novo, viewing the facts and the reasonable inferences therefrom in the light most favorable to the nonmoving party." Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### A.

#### 1.

Plaintiff's first claim alleges that Dr. Phillip violated Plaintiff's Eighth Amendment rights by denying Plaintiff insulin to treat his diabetes. Dr. Phillip was Plaintiff's prison doctor at Federal Prison Camp Butner and treated several of Plaintiff's medical conditions, including his diabetes. On June 5, 2005, shortly after Plaintiff's arrival at Butner, Dr. Phillip prescribed Plaintiff morning and evening insulin

10

injections, as well as supplemental insulin injections based upon a "sliding scale" keyed to his blood sugar. According to that sliding scale, Plaintiff was prescribed two units of insulin when his blood sugar was between 141 and 150 milligrams ("mg") per deciliter ("dL"), four units when his blood sugar was between 151 and 200mg/dL, and so on.

On June 14, 2005, Plaintiff requested from Dr. Phillip and other medical personnel at Federal Medical Camp Butner a supplemental insulin injection because his blood sugar was 200mg/dL. Based on the sliding scale Dr. Phillip prescribed, Plaintiff should have received four units of insulin. At the time of his request, Plaintiff admits that he was "angry"--at least in part because his blood sugar was high. The parties agree that, rather than providing four units of insulin as dictated by Plaintiff's prescription, Dr. Phillip terminated Plaintiff's visit to the medical clinic and declined to provide him with insulin. Instead, Dr. Phillip developed an alternative plan to monitor Plaintiff's blood sugar levels at mealtimes and to "cover each meal with short acting insulin" if Plaintiff desired. J.A. 521.[2]

---

[2] Citations to "J.A. __" refer to the Joint Appendix filed by the parties in this appeal.

According to Plaintiff's evidence, the June 14 incident was not the first time Dr. Phillip denied Plaintiff prescribed insulin injections. Nor, according to Plaintiff, was it the last. Although medical records reflect Dr. Phillip's plan to monitor Plaintiff's blood sugar and provide supplemental insulin at mealtimes, Plaintiff filed two Inmate Request to Staff forms ("cop-outs") that suggest this plan was never followed. First, on June 22, 2005, Plaintiff directed a cop-out to Dr. Phillip "request[ing] insulin coverage whenever my blood glucose levels rise above 200mg/dl." J.A. 88. And on July 27, 2005, Plaintiff addressed another cop-out to Dr. Phillip referencing his June 22 request for supplemental insulin (along with several other, unrelated requests for medical attention) and stating that his conditions "remain untreated [and] uncured." J.A. 82. Dr. Phillip admits that he did not provide Plaintiff with insulin during the June 14 appointment, but asserts that the denial was justified based on Plaintiff's threatening behavior and that his treatment of Plaintiff's diabetes before and after this incident was appropriate.

Plaintiff claims that Dr. Phillip's alleged repeated denials of supplemental insulin resulted in an unhealthy increase in Plaintiff's blood sugar and his hemoglobin A1C levels, which rose from approximately 7 (within the normal range for diabetics) to 9.8 (an unhealthy level for diabetics) from

12

January to September 2005. More generally, Plaintiff claims that the inadequate treatment of his diabetes resulted in "unnecessary exacerbation of his serious diabetic . . . condition[], causing serious harm to the Plaintiff [that] resulted in damage to the Plaintiff's kidney's [sic], eyesight, nervous system, . . . and psychological well being." J.A. 165.

2.

Contrary to the district court's holding, Plaintiff adduced sufficient evidence to establish a genuine dispute of fact as to both Farmer's objective and subjective prongs.

Regarding the objective prong, Plaintiff's evidence established that he suffers from a serious medical condition: insulin-dependent diabetes. This medical condition was diagnosed by a medical professional, and Dr. Phillip provided treatment for the condition by prescribing Plaintiff's insulin regimen. Moreover, Plaintiff has created a genuine issue of material fact regarding whether Dr. Phillip's failure to provide him with insulin was an "extreme deprivation" resulting in "a serious or significant physical or emotional injury" or "a substantial risk" thereof actionable under the Eighth Amendment. See De'Lonta, 330 F.3d at 634. Dr. Phillip admits that he denied Plaintiff a supplemental dose of insulin on June 14, 2005, at a time when Plaintiff's blood sugar was 200mg/dL. This may be sufficient alone to meet the objective test set forth in

13

Farmer.  See, e.g., Lolli v. Cty. of Orange, 351 F.3d 410, 420 (9th Cir. 2003) ("Leaving a diabetic . . . without proper food or insulin when it is needed creates an objectively, sufficiently serious risk of harm." (internal quotation marks omitted)).

Even without drawing this conclusion, however, Plaintiff raises a genuine dispute of material fact as to whether the deprivation of his prescribed insulin caused serious injury or a substantial risk of serious injury as required by the objective prong.  He does so by pointing to his deposition testimony and medical records showing an increase in his blood sugar and hemoglobin A1C values from January to September 2005, which encompasses the period from June to August 2005 during which Dr. Phillip was assigned to treat Plaintiff's diabetes.  Viewing these facts in the light most favorable to Plaintiff, there are genuine disputes of material fact as to whether (1) this increase is itself a serious injury and (2) the act of withholding insulin from an insulin-dependent diabetic alone creates a serious injury or a substantial risk of such injury.

Plaintiff's evidence also created a genuine dispute of material fact as to Farmer's subjective prong.  As Plaintiff's prison doctor, Dr. Phillip knew of Plaintiff's serious medical condition.  Indeed, Dr. Phillip prescribed the insulin regimen under which Plaintiff was to receive supplemental insulin

14

injections when his blood sugar was above 140mg/dL. This evidence establishes that Dr. Phillip was aware of facts-- Plaintiff's diabetes and his blood sugar value at the time of his request for insulin--giving rise to an inference that failing to provide insulin could result, at least, in a substantial risk of serious harm.

Moreover, viewed in the light most favorable to Plaintiff, Plaintiff's lengthy prison medical records show that his diabetes diagnosis was "longstanding, pervasive, well-documented, [and] expressly noted by prison officials," Parrish, 372 F.3d at 303--including by Dr. Phillip himself. This is sufficient to prove a prima facie case of deliberate indifference. Id. Furthermore, as in Miltier, Dr. Phillip knew of Plaintiff's medical need for insulin at the time of the request and failed to respond to that known need, raising an inference of deliberate indifference. 896 F.2d at 853, overruled in part on other grounds by Farmer, 511 U.S. at 837. The district court erred in failing to apply the Parrish presumption and infer deliberate indifference from Dr. Phillip's knowledge of Plaintiff's diabetes and disregard of his own prescription designed to manage that condition.

Notwithstanding the factual disputes outlined above, the district court granted Dr. Phillip's motion for summary judgment for two principal reasons. First, the court found fault with

15

Plaintiff's failure to offer medical expert testimony (a) that his blood sugar level during the June 14 appointment "created a substantial harm" under the objective prong of Farmer and (b) that Dr. Phillip's failure to provide insulin during the appointment "resulted in some substantial harm" sufficient to satisfy the objective prong.[3] J.A. 956. Second, the district court concluded that Dr. Phillip had no obligation under the Eighth Amendment to provide Plaintiff, "an angry and hostile patient," with the requested insulin. J.A. 956. Accordingly, the district court held, Dr. Phillip satisfied his constitutional burden by ordering staff to monitor Plaintiff's condition and provide supplemental insulin at mealtimes. We disagree with both conclusions.

Regarding the absence of expert medical testimony, plaintiffs alleging deliberate indifference must, "[a]t a

_____

[3] We emphasize that the correct standard to apply when considering the objective prong of deliberate indifference claims is whether there is an "extreme deprivation" and "a serious or significant physical or emotional injury resulting from the challenged conditions or . . . a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." De'Lonta, 330 F.3d at 634. The district court's reference to a "substantial harm" requirement does not change this analysis substantively, but does alter unnecessarily the language set forth in Fourth Circuit precedent. We caution that the "serious or significant" injury or "substantial risk" standard, not the district court's "substantial harm" standard, should be used when instructing the jury on the objective prong of the Farmer test.

16

minimum, . . . specifically describe not only the injury but also its relation to the allegedly unconstitutional condition." Strickler v. Waters, 989 F.2d 1375, 1381 n.9 (4th Cir. 1993). There is no requirement, however, that a plaintiff alleging deliberate indifference present expert testimony to support his allegations of serious injury or substantial risk of serious injury. Rather, the Federal Rules of Evidence apply, and expert testimony is necessary--indeed, permissible--only when it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). When laypersons are just "as capable of comprehending the primary facts and of drawing correct conclusions from them" as are experts, expert testimony may properly be excluded. Salem v. U.S. Lines Co., 370 U.S. 31, 35 (1962). As a result, when the seriousness of an injury or illness and the risk of leaving that injury or illness untreated would be apparent to a layperson, expert testimony is not necessary to establish a deliberate indifference claim. See, e.g., Blackmore v. Kalamazoo Cty., 390 F.3d 890, 899-900 (6th Cir. 2004); Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987).

Recognizing that it is a "[w]ell-known" fact that diabetes is a "common yet serious illness that can produce harmful consequences if left untreated for even a short period of time," several of our Sister Circuits have denied defendants summary

17

judgment on Eighth Amendment claims alleging that prison officials deprived diabetic inmates of insulin, even when those claims were not supported by expert testimony. Lolli, 351 F.3d at 419–20 (concluding, based on the plaintiff's testimony, that a diabetic person who is "unable to take insulin . . . regularly" suffers a sufficiently serious risk of harm); Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582–83 (3d Cir. 2003) (holding, in the absence of expert testimony, that a reasonable jury could conclude that prison officials who knew the inmate was diabetic and needed insulin regularly were deliberately indifferent in denying insulin for nonmedical reasons). We agree: a jury is capable of understanding, unaided, the risks of failing to provide insulin to a diabetic and of a trained doctor's denial of a diabetic's known need for insulin. Accordingly, we reject the district court's contention that Plaintiff was required to adduce expert testimony to demonstrate an objectively serious deprivation giving rise to a claim under the Eighth Amendment.

Regarding Dr. Phillip's response to Plaintiff's request for insulin, we agree that--even when both Farmer prongs are satisfied--a prison official who responds reasonably in the face of a known, serious risk of harm to an inmate may be "free from liability" under the Eighth Amendment even if harm is not avoided. Farmer, 511 U.S. at 844. But even assuming arguendo

18

that it was reasonable for Dr. Phillip to decline to provide Plaintiff insulin in the face of his "angry" demands and, instead, to plan to monitor Plaintiff's blood sugar and provide supplemental insulin at mealtimes, Plaintiff nonetheless has established a genuine dispute of fact as to whether Dr. Phillip followed through with that plan. In particular, Plaintiff's June 22 and July 27, 2005, cop-outs raise a reasonable inference that Dr. Phillip failed to provide supplemental insulin as proposed by his alternative plan. Therefore, the district court erred in concluding that there was no genuine dispute of fact as to whether Dr. Phillip reasonably responded to Plaintiff's medical needs.

B.

1.

We now turn to Plaintiff's second Eighth Amendment claim, which arises out of Dr. Phillip's and Administrator McClintock's alleged failure to provide aid to Plaintiff during a medical emergency. On August 24, 2005, Plaintiff was locked in his housing unit while prison officials conducted a "census count."[4] During that time, the flow of water to Plaintiff's unit was discontinued because maintenance workers were repairing the

---

[4] During a census count, inmates must remain in place while prison officials conduct a count to ensure that all inmates are in their assigned locations.

19

unit's showers. While locked down and unable to access water, Plaintiff began experiencing "extreme [stomach] pain . . . was throwing up vomit and blood . . . [and] became incontinent." J.A. 846. In this state, Plaintiff used an emergency phone in the unit to call for help by dialing a "deuces alarm" (2-2-2).

The parties dispute Plaintiff's reason for using the emergency phone. Plaintiff claims that he used the phone to report his illness, saying "I'm sick. The water is off. I can't get anything to drink. I can't wash up. I've got blood all over me." J.A. 848–49. By contrast, in a now-expunged incident report arising from the phone use, prison officials recorded that Plaintiff used the phone to complain about the lack of water. According to prison officials, Plaintiff complained that he "ha[d] to get a shower" before reporting to his work shift that afternoon. J.A. 327. Plaintiff asserts that the officials' explanation is unfounded since prison records show that he worked only the morning shift on the day in question.

When prison officials responded to Plaintiff's emergency call, they offered no assistance even though Plaintiff points to several "outward signs" of his need for medical attention, including that his cell "reeked to high heaven" and that his

face was covered with partially wiped-up vomit and blood.[5]  J.A. 867–68.  Despite his distressed state, Plaintiff claims that Dr. Phillip simply "looked at [Plaintiff] in disgust and turned his head and started to walk away," providing no medical aid.  J.A. 858.  According to Plaintiff's evidence, Administrator McClintock also failed to provide Plaintiff with treatment or call for medical assistance, instead ordering prison guards to "lock him up" in the Special Housing Unit.  J.A. 858–59.  Thereafter, prison officials removed Plaintiff to the Special Housing Unit, where he was confined for six months.

Plaintiff's evidence indicates he did not receive medical attention until at least two days after the August 24 incident, with the only related entry in his medical record appearing on August 29, 2005--five days after the purported emergency.  In court documents, Plaintiff attributes his emergency to acute cholelithiasis (gallstones), signs of which were first documented in his medical record on July 20, 2005, over one month prior to the incident.

---

[5] In recounting their version of events, prison officials make no mention of Plaintiff's physical appearance or medical condition.

21

2.

Again, Plaintiff's evidence establishes genuine disputes of material fact as to both Farmer prongs. First, there is a genuine dispute regarding whether Dr. Phillip's and Administrator McClintock's failure to provide aid to Plaintiff after he used the emergency phone constituted an "objectively, sufficiently serious" deprivation. Viewing the facts in the light most favorable to Plaintiff, as we must, Plaintiff was suffering from a serious, visible medical need at the time Dr. Phillip and Administrator McClintock responded to his emergency call. In particular, Plaintiff was experiencing "extreme pain in [his] stomach, . . . throwing up vomit and blood[, and] became incontinent." J.A. 846. This is the sort of serious medical condition "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)).

Further, Plaintiff's evidence creates a genuine dispute of fact as to whether the denial of medical attention during this emergency resulted in serious injury or a substantial risk of serious injury. A juror could reasonably infer that failing to treat, for two to five days, an inmate who is vomiting blood and experiencing evident physical distress creates a substantial risk that serious bodily injury will result or has already

22

occurred. This conclusion is supported by Plaintiff's medical records, which indicate that, at the time of the alleged emergency, he may have been experiencing complications arising from an earlier gallstone diagnosis.

Plaintiff also has raised a genuine issue of material fact on the subjective prong of Farmer--whether Dr. Phillip and Administrator McClintock acted with deliberate indifference in failing to provide assistance in the face of Plaintiff's alleged medical emergency. In particular, there is sufficient circumstantial evidence to suggest that Defendants were aware of facts giving rise to an inference that their decision to send Plaintiff to the Special Housing Unit without providing medical aid created a substantial risk of serious injury.

Plaintiff's testimony that his cell "reeked" and his face exhibited visible signs of illness, as well as his contemporaneous account of his symptoms create a genuine factual dispute about whether his need for medical attention was so obvious that an official observing the scene would have both known of the facts giving rise to a risk of serious harm resulting from failure to provide medical attention and inferred that such a substantial risk was present. In addition, these outward signs of Plaintiff's need for medical attention and Defendants' contemporaneous failure to offer aid give rise to an inference of deliberate indifference sufficient for Plaintiff's

23

claim to survive summary judgment.  See Miltier, 896 F.3d at 853 ("Failure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs.").

C.

1.

Plaintiff's final Eighth Amendment claim is against Warden Stansberry and alleges a denial of a proper diabetic diet during his six-month confinement in the Special Housing Unit. According to Plaintiff's evidence, the only meals available to Plaintiff in the Special Housing Unit were those served to every other inmate in the unit--meals high in sugar and accompanied by a sugary drink.

Plaintiff used several channels of communication to complain to Warden Stansberry about the unavailability of a diabetic diet.  First, Plaintiff complained to the Warden during her weekly rounds in the unit.  Second, Plaintiff submitted cop-outs to Warden Stansberry seeking redress for his complaints. Third, Plaintiff wrote to his congressman, asking him to inquire with prison officials about the deficiencies in his diet.  After the congressman forwarded this correspondence to the Bureau of Prisons, Warden Stansberry addressed the allegations in a reply letter.  She acknowledged that inmates in the Special Housing Unit did not receive special diets but maintained that inmates

24

were educated about how to select foods appropriate for their medical conditions.

Because of the alleged deficiencies in the diet offered in the Special Housing Unit, Plaintiff claims to have suffered an increase in his blood sugar and A1C levels. Prison medical officials sought to combat these symptoms by increasing his insulin dosage. This treatment purportedly "resulted in the loss of . . . diabetic control . . . and severe painful and destructive episodes of diabetic hypoglycemia and . . . hyperglycemia." J.A. 626.

The district court assumed without deciding that Plaintiff raised a genuine issue of material fact on Farmer's objective prong: that the lack of a diabetic diet constituted a sufficiently serious deprivation. The court went on to conclude, however, that there was no genuine dispute regarding whether Warden Stansberry knew of and disregarded Plaintiff's need for a special diet. The court based its conclusion on Plaintiff's log of interactions with prison officials, which revealed that Plaintiff was "mainly focused on pursuing a collateral attack on his criminal conviction and on defending against his disciplinary charge, rather than on informing Stansberry of the conditions" he considered unconstitutional. J.A. 964. The court went on to note that even if there were a genuine dispute of material fact on this subjective prong,

25

Plaintiff's acknowledgement that he otherwise received adequate medical treatment for his diabetes while confined in the Special Housing Unit rendered a finding of deliberate indifference untenable.

2.

We affirm the district court's award of summary judgment in favor of Warden Stansberry on this claim, but for a different reason. Viewing the record in the light most favorable to Plaintiff, we conclude that Plaintiff failed to raise a genuine dispute of material fact regarding whether, in this case, the lack of a diabetic diet was a sufficiently serious deprivation to be actionable under the Eighth Amendment. Warden Stansberry conceded in her deposition and in her letter to Plaintiff's congressman that there was no diabetic diet provided to inmates in the Special Housing Unit. Even so, Warden Stansberry stated on at least two occasions that all inmates were educated about how to select from the available meals foods appropriate for their medical conditions.

In Farmer, the Supreme Court stated that the Eighth Amendment imposes a duty on prison officials to provide inmates with "adequate food." Farmer, 511 U.S. at 832. Several of our Sister Circuits have reasoned, albeit in unpublished decisions, that this duty includes an obligation to provide a medically appropriate diet when necessary. For instance, the Tenth

26

Circuit has stated that the Eighth Amendment "requires officials to provide inmates with a special diet if such an accommodation is medically necessary." Frazier v. Dep't of Corr., No. 97-2086, 1997 WL 603773, at *1 (10th Cir. Oct. 1, 1997) (citing Byrd v. Wilson, 701 F.2d 592, 595 (6th Cir. 1983)). Similarly, the Seventh Circuit has noted that the Amendment "assures prisoners a medically and nutritionally sound diet." Jackson v. Hanlon, Nos. 89-2144, 89-2368, 1991 WL 3056, at *1 (7th Cir. Jan. 14, 1991). Likewise, the Sixth Circuit has concluded that "officials must provide inmates with a special diet if such an accommodation is obviously medically necessary." Miller v. Cleek, No. 99-5145, 1999 WL 1045156, at *2 (6th Cir. Nov. 9, 1999) (citing Byrd, 701 F.2d at 594–95). We agree.

Yet the Eighth Amendment's requirement that prisoners receive special diets when medically appropriate is not without limit. Courts have consistently held that prison officials comply with this mandate when they provide some food that the complaining prisoner is able to eat without compromising his health. For instance, in Frazier, the Tenth Circuit rejected a prisoner's deliberate indifference claim when he "d[id] not contend that he [wa]s unable to eat any of the food provided by the correctional facility" and conceded that he was "able to eat certain items on the facility's menu." Frazier, 1997 WL 603773, at *1. The same was true in Miller, where the Sixth Circuit

27

affirmed dismissal of an inmate's inadequate diet claim based in part on the lack of "evidence that [he] could not maintain his health based on the diet provided and [the fact that he] d[id] not contend that he was unable to eat any of the food provided by the jail." Miller, 1999 WL 1045156, at *2.

Likewise, courts have found that inmates who are denied special diets suffer no constitutional harm so long as they are instead given instruction on how to eat the available meals in a way that satisfies their medical needs. For example, the Tenth Circuit has found that an inmate who was served a universal, cafeteria-style diet but could use "nutritional break down cards" to determine what foods were amenable to his medical condition could not claim deliberate indifference based on the lack of a special diet. Moore v. Perrill, No. 94-1377, 1995 WL 139407, at *1 (10th Cir. Mar. 31, 1995); see also Williams v. Hartz, 43 F. App'x 964, 966 (7th Cir. 2002) (affirming the district court's award of summary judgment when the complaining prisoner was not given a special diet, but was "instructed" on medically appropriate food choices and given "snacks" when necessary to raise his blood sugar).

And a California district court held that a prisoner who received the "Heart Healthy" diet provided to all inmates in the state prison system and failed to present evidence that he could not eat certain menu items or that the "overall percentage" of

28

such items in each meal was significant could not survive summary judgment on his deliberate indifference claim. <u>Baird v. Alameida</u>, 407 F. Supp. 2d 1134, 1140–41 (C.D. Cal. 2005).

We find these decisions persuasive. Only an "extreme deprivation" is actionable under the Eighth Amendment. According to Plaintiff, the meals in the Special Housing Unit included "a bread, a meat product[,] a vegetable[,] and a sweet dessert." J.A. 279. Plaintiff has not offered evidence that there was no combination of foods in each meal that would have provided him with adequate sustenance without causing adverse medical consequences, instead asserting only that the meals were high in sugar and accompanied by a sugary drink. Plaintiff also does not contradict prison officials' claims that he was educated on how to eat the available meals (which were from the "national diet" "approved for all" inmates, J.A. 462, 539) in a way that would not exacerbate his diabetic condition.[6] Accordingly, the district court properly awarded Warden

---

[6] Because Plaintiff has not raised a genuine issue of material fact as to whether there was a sufficiently serious deprivation, we need not consider whether he has sufficiently established the subjective, deliberate indifference prong. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23 (1986) (requiring the nonmovant to "make a sufficient showing on" every essential element to survive summary judgment).

29

Stansberry summary judgment on Plaintiff's diet and nutrition claim.[7]

IV.

Having determined that Plaintiff's claims against Dr. Phillip and Administrator McClintock should go forward, we must address Defendants' argument that they are entitled to qualified immunity. Defendants raised qualified immunity before the district court, but because the court ruled for Defendants on the merits, it did not reach the question of Defendants' entitlement to qualified immunity. Qualified immunity may provide a basis for affirming the district court. R.R. ex rel. R. v. Fairfax Cty. Sch. Bd., 338 F.3d 325, 332 (4th Cir. 2003) ("[W]e may affirm the district court's judgment on any ground properly raised below.") (citing Nw. Airlines, Inc. v. Cty. of Kent, 510 U.S. 355, 364 (1994)).

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages

---

[7] Though we affirm the district court's award of summary judgment on Plaintiff's diet and nutrition claim, we reject the district court's reasoning that because Plaintiff received some adequate treatment for his diabetes while in the Special Housing Unit he cannot complain about other aspects of that treatment. To the contrary, this court has held that "just because [prison officials] have provided [an inmate] with some treatment . . . it does not follow that they have necessarily provided h[im] with constitutionally adequate treatment." See De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013).

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether defendant government officials are protected by qualified immunity, the court considers both "whether a constitutional right [was] violated on the facts alleged" and "whether the right was clearly established" at the time of the conduct in question. Saucier v. Katz, 533 U.S. 194, 200 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).

As explained previously, Plaintiff has alleged facts sufficient for a reasonable jury to conclude that his constitutional rights were violated when Dr. Phillip denied Plaintiff his prescribed insulin and when Dr. Phillip and Administrator McClintock failed to aid Plaintiff during a medical emergency. See supra Parts III.A, B. Although a jury may ultimately decide that Defendants' version of events is more credible, we are barred from making such a determination when deciding whether to grant summary judgment based on qualified immunity. See Meyers v. Balt. Cty., 713 F.3d 723, 733 (4th Cir. 2013).

To determine whether the right was clearly established, we first must define the right at issue. Occupy Columbia v. Haley, 738 F.3d 107, 118 (4th Cir. 2013). Dr. Phillip maintains that

we should frame our analysis of qualified immunity as to Plaintiff's insulin claim as whether it is "clearly established that a prison medical provider runs afoul of the Eighth Amendment when he does not give one single dose of insulin to a federal inmate, after the inmate becomes angry and hostile . . ., and the doctor implements a plan to monitor the inmate thereafter." Appellees' Br. at 44. Similarly, Dr. Phillip and Administrator McClintock assert that we should consider their qualified immunity as to Plaintiff's medical emergency claim based on whether a reasonable official would have known it violated a clearly established constitutional right to follow protocol by placing an inmate in administrative detention after he receives an incident report.

But "[f]or a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). There is no requirement that the "very action in question [must have] previously been held unlawful" for a reasonable official to have notice that his conduct violated that right. Id. Accordingly, we reject Dr. Phillip's and Administrator

32

McClintock's invitations to define the rights at issue in accordance with the "very action[s] in question."[8]

Rather, we define the right in question as the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs. This definition is consistent with previous deliberate indifference cases from this Circuit. For example, in Iko v. Shreve--a case in which a prisoner alleged government officials failed to conduct a medical evaluation after pepper-spraying him to compel compliance during a cell removal--this Court defined the right at issue as "the right to adequate medical care." 535 F.3d at 243 n.12. This definition also accords with Supreme Court jurisprudence, which has long dictated that the Eighth Amendment confers a duty upon prison officials to ensure that prisoners "receive adequate . . . medical care." Farmer, 511 U.S. at 832.

A prisoner's right to adequate medical care and freedom from deliberate indifference to medical needs has been clearly established by the Supreme Court and this Circuit since at least 1976 and, thus, was clearly established at the time of the

---

[8] We reject Dr. Phillip's and Administrator McClintock's framing of the right at issue in Plaintiff's medical emergency claim for the additional reason that it would require us to make a credibility determination inappropriate at the summary judgment stage of litigation.

events in question. See, e.g., Estelle, 429 U.S. at 104–05 ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." (citation omitted) (quoting Gregg v. Georgia, 428 U.S. 153, 182–83 (1976))); Farmer, 511 U.S. at 832 ("[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care."); Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977) ("This circuit has consistently adhered to the prevailing view in requiring reasonable medical treatment [for inmates].") (citing authorities).

Because we conclude that there is sufficient evidence that Plaintiff's Eighth Amendment right to adequate medical care and freedom from officials' deliberate indifference to his medical needs was violated and that the right was clearly established, Dr. Phillip and Administrator McClintock are not entitled to qualified immunity.[9]

---

[9] Although we need not reach the issue here, we note once again the "special problem" of "'applying an objective qualified immunity standard in the context of an Eighth Amendment claim that is satisfied only by a showing of deliberate indifference'--that is, a knowing violation of the law." Cox v. Quinn, 828 F.3d 227, 238 n.4 (4th Cir. 2016) (quoting Rish v. Johnson, 131 F.3d 1092, 1098 n.6 (4th Cir. 1997)).

Some Circuits have resolved this problem by concluding that qualified immunity is unavailable when the plaintiff presents a genuine dispute of material fact regarding the defendant's (Continued)

V.

For the foregoing reasons, we affirm the district court's disposition of Plaintiff's deliberate indifference claim against Warden Stansberry, reverse its resolution of the claims against Dr. Phillip and Administrator McClintock, and reject Dr. Phillip's and Administrator McClintock's invocations of qualified immunity.

AFFIRMED IN PART AND REVERSED IN PART

deliberate indifference. The Seventh Circuit, for example, has held that the subjective prong of the Farmer test and the objective, clearly established prong of the qualified immunity test "effectively collapse into one" when the plaintiff raises genuine factual disputes regarding the defendant's deliberate indifference. Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). That court explained that when a plaintiff raises genuine disputes of fact on Farmer's subjective prong, "a defendant may not avoid trial on the grounds of qualified immunity" even though qualified immunity protects covered government officials from suit, not merely from liability. Id.; see also, e.g., Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) ("[T]o the extent that the plaintiffs have made a showing sufficient to overcome summary judgment on the merits [of their deliberate indifference claim], they have also made a showing sufficient to overcome any claim to qualified immunity."). But see Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049–50 (9th Cir. 2002) (rejecting the view that the deliberate indifference and clearly established inquiries merge).

35