**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-6733**

KEITH D. GOODMAN,

                Plaintiff – Appellant,

        v.

KIM RUNION; ELTON BROWN, Doctor; KRYM; SPRUILL, Doctor,

                Defendants – Appellees,

        and

A. DAVID ROBINSON; J. LAFOON; Q. BIRCHETTE; MS. G. F.
SIVELS; G. ROBINSON; CASSANDRA TAYLOR; C. MAYES; C. BAILEY;
PRISON HEALTH SERVICES; GENE M. JOHNSON; HAROLD W. CLARKE;
JOHN JABE; FRED SHILLING; HARVARD STEPHENS, Doctor,

                Defendants.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.  Gerald Bruce Lee, District
Judge.  (1:11-cv-00079-GBL-IDD)

Argued: December 6, 2016              Decided: January 25, 2017

Before GREGORY, Chief Judge, and TRAXLER and DIAZ, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:**  Erik R. Zimmerman, ROBINSON, BRADSHAW & HINSON, P.A.,
Chapel Hill, North Carolina, for Appellant.  Carlene Booth

Johnson, PERRY LAW FIRM, Dillwyn, Virginia; Gary Christopher Jones, Jr., SINNOTT, NUCKOLS & LOGAN, P.C., Midlothian, Virginia, for Appellees.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Keith Goodman is an inmate in the custody of the Virginia Department of Corrections ("VDOC"). He brought this action under 42 U.S.C. § 1983 against optometrists Dr. Elton Brown and Dr. David Spruill, (together "Defendants"), claiming that they were deliberately indifferent to his medical needs by refusing to prescribe him contact lenses instead of eyeglasses to correct his vision, in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Goodman appeals the district court's grant of summary judgment to the Defendants, as well as the district court's denial of his motion for appointment of an expert witness and for discovery. We affirm.

I.

Prior to his incarceration, Goodman primarily wore contact lenses to correct his condition of moderate myopia, commonly known as nearsightedness. From 2005 through 2008, VDOC optometrists prescribed Goodman contact lenses, rather than eyeglasses, at his request. According to Goodman, he avoided wearing prescription eyeglasses because he believed that they caused him to experience headaches.

In January 2009, Dr. Elton Brown, the treating optometrist at Brunswick Correctional Center, where Goodman had been transferred, evaluated Goodman's vision and refused to prescribe him contact lenses. Under VDOC policy:

3

> Contact lens[es] will be supplied when medically indicated. Offenders wearing contact lens[es] when entering the system will be evaluated and allowed to keep the lenses if medically indicated. Offenders not meeting the criteria for contact lens[es] will be issued eyeglasses if needed.

J.A. 85. The policy was based upon the VDOC's understanding "that there are a few ophthalmologic diseases which are improved with contact lenses versus eyeglasses." J.A. 81. Absent that medical determination, however, "eyeglasses, for the most part, correct vision disorders, are easier to manage, and are less expensive" than contact lenses. J.A. 81-82.

Dr. Brown "saw no indication of any medical need for Mr. Goodman to be prescribed contact lenses, nor any reason why having eyeglasses instead of contact lenses would cause Mr. Goodman to have any headaches or discomfort." J.A. 157. According to Goodman, Dr. Brown told him that he would check with the prison warden and see if she would approve the prescription of contact lenses to correct Goodman's vision, at Goodman's expense, notwithstanding the VDOC policy. However, that request was denied, and Dr. Brown thereafter prescribed and fitted Goodman with prescription eyeglasses.

In April 2009, Goodman visited Dr. Brown again and complained of headaches which Goodman attributed to his wearing his eyeglasses. Dr. Brown informed Goodman that he "had excellent vision in both eyes with the correction of his

4

eyeglasses, and there was no medical reason for his level of myopia, with only a minimum difference between the two eyes, to cause headaches with his prescribed eyeglasses." J.A. 158. In Dr. Brown's judgment, "[t]here was no medical reason for Mr. Goodman to be prescribed contact lenses instead of eyeglasses, nor any medical reason for switching Mr. Goodman to contact lenses from eyeglasses to alleviate any headaches." J.A. 158. And "because [Dr. Brown] was unable to verify [Goodman's] headaches, he w[as] disallowed from prescribing anything other than eyeglasses for [Goodman's] needed vision-correction." J.A. 39.

In September 2009, Goodman was evaluated by Dr. Krym, the VDOC optometrist at Green Rock Correctional Center, where Goodman had been transferred. Goodman alleged that Dr. Krym likewise informed him that he could not prescribe contact lenses to correct his vision.

Goodman was subsequently transferred to Greensville Correctional Center. In March 2010, Goodman was evaluated by Dr. David Spruill, the prison optometrist at Greensville. Dr. Spruill also found no medical indication for contact lenses. According to Dr. Spruill, "[a]t no time, did I believe, in my medical judgment, that anything to do with Mr. Goodman having been prescribed eyeglasses instead of contact lenses was the cause of any headaches, nor did I believe that prescribing Mr.

5

Goodman contact lenses would alleviate any headaches." J.A. 227. Goodman subsequently requested that Prison Health Services clarify to Dr. Spruill that the VDOC policy did not prohibit him from prescribing contacts if medically indicated to alleviate Goodman's headaches. In response, Goodman was advised by the prison officials that "contact lenses can only be prescribed when medically necessary. According to your medical record you do not have a clinical need for contacts." J.A. 90.

Noting that the optometrist had stated that Goodman's headaches "were unrelated to the eyeglasses," the VDOC medical officials then referred Goodman to an outside ophthalmologist "to determine what [was] causing his headaches," J.A. 79.[1] Goodman was seen by Dr. Gupta in July 2011. Goodman has provided no medical evidence or other information about the results of his ophthalmology examination. However, he does not assert that Dr. Gupta found his headaches to be causally related

---

[1] An optometrist is "a health care provider who examines, diagnoses, treats, and manages diseases and disorders of the visual system, the eye, and associated structures, as well as diagnosing related systemic conditions." Dorland's Illustrated Medical Dictionary 1331 (32nd ed. 2012). An ophthalmologist is "a physician who specializes in the diagnosis and medical and surgical treatment of diseases and defects of the eye and related structures." Dorland's Illustrated Medical Dictionary 1329 (32nd ed. 2012) (emphasis added).

to his wearing eyeglasses and he continues to assert that he has been denied contact lenses by the VDOC.[2]

Goodman thereafter filed this complaint under 42 U.S.C. § 1983 against various prison officials, alleging that they failed to adequately respond to his vision and headache complaints. Goodman additionally sued the three optometrists that had evaluated him - Dr. Brown, Dr. Spruill, and Dr. Krym - alleging that they were deliberately indifferent to his serious medical needs because they knew that his eyeglasses caused him to suffer from headaches and nonetheless refused to prescribe him contact lenses. Goodman did not name Dr. Gupta, the ophthalmologist, as a defendant.

We previously affirmed the district court's dismissal of Goodman's claims against the prison officials under 28 U.S.C. § 1915A(b)(1) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. See Goodman v. Johnson, 524 Fed. App'x. 887 (4th Cir. 2013) (per curiam). Assuming without deciding that Goodman suffered from a sufficiently serious medical need, however, we reversed the district court's dismissal of Goodman's claims

---

[2] Goodman's father, a physician specializing in obstetrics and gynecology, contacted the VDOC to advocate his son's request for contact lenses during this time period and has filed an affidavit on his son's behalf. However, Dr. Goodman does not claim to have evaluated or treated Goodman for his myopia, nor does he specialize in optometry or ophthalmology.

7

against the three optometrists because the VDOC policy alone would not insulate them from liability if their treatment otherwise rose to the level of deliberate indifference.

On remand, the district court granted summary judgment to Dr. Brown and Dr. Spruill and denied Goodman's motion for summary judgment. The district court dismissed Goodman's claim against Dr. Krym for lack of service. See Fed. R. Civ. P. 4(m). This appeal followed.

## II.

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court and viewing the evidence in the light most favorable to the nonmoving party. See Martin v. Lloyd, 700 F.3d 132, 135 (4th Cir. 2012). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Conclusory or speculative allegations do not suffice" to defeat summary judgment, "nor does a mere scintilla of evidence in support of [the non-moving party's] case" suffice. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted).

The Eighth Amendment to the United States Constitution prohibits prison officials from inflicting "cruel and unusual punishments" by acting with deliberate indifference to a

8

prisoner's serious medical needs. U.S. Const. amend. VIII; Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail in a medical needs case, the inmate must satisfy the two-pronged test set forth in Farmer v. Brennan, 511 U.S. 825 (1994).

First, the inmate must demonstrate the defendant's deliberate indifference to an "objectively 'sufficiently serious'" medical need, Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Farmer, 51 U.S. at 834), "that has either 'been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctors' attention.'" Id. (quoting Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008)).

Second, under the subjective prong, the inmate must prove that the defendants "acted with a 'sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 834). The inmate must show that the defendant "actually knew of and disregarded a substantial risk of serious injury . . . or that they actually knew of and ignored a . . . serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 576 (4th Cir. 2001); see also Scinto, 841 F.3d at 225.

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not

9

state a valid claim." Id. And "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wonton infliction of pain or to be repugnant to the conscience of mankind." Id. at 105-06 (internal quotation marks omitted); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (The medical provider's disregard of the prisoner's serious medical needs must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."), overruled in part on other grounds by Farmer, 511 U.S. at 837.

## III.

### A.

Viewed in the light most favorable to Goodman, the record creates no genuine issue of material fact to support Goodman's deliberate indifference claim against the Defendants.

Even assuming, without deciding, that Goodman's need for vision correction and/or his subjective complaints of headaches constituted an "objectively sufficiently serious medical need," there is no evidence that Defendants denied Goodman medically necessary treatment or that their failure to provide alternative treatment in the form of contact lenses was the result of deliberate indifference on their part.

Goodman has moderate myopia, which Defendants corrected to 20/20 vision by prescription eyeglasses. Goodman subjectively

10

complained of headaches and informed Defendants of his opinion that such headaches were causally related to his wearing eyeglasses. Defendants independently evaluated and treated Goodman at two separate prisons, considered his complaint from the perspective of their field of optometry, and found no medical basis upon which to believe that Goodman's headaches were caused by his eyeglasses or that contact lenses would alleviate them. According to Goodman's complaint, a third optometrist, Dr. Krym, also evaluated Goodman and refused to prescribe contact lenses. And because the optometrists had concluded that Goodman's headaches were <u>not</u> causally related to his prescription eyeglasses, VDOC medical personnel thereafter referred Goodman to an ophthalmologist for a follow-up examination to determine the cause of Goodman's headaches.

Plainly, Goodman disagrees with the Defendants' medical judgment that his headaches were <u>not</u> causally related to his wearing prescription eyeglasses. For that reason, he also disagrees with their decision not to authorize the prescription of contact lenses under the VDOC policy as being medically indicated to alleviate such headaches. Generally, such "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim." <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>see</u> <u>also</u> <u>Russell v. Sheffer</u>, 528 F.2d 318, 319 (4th Cir. 1975) (per

11

curiam) ("Questions of medical judgment are not subject to judicial review.").

There is also insufficient evidence to support Goodman's theory that Defendants must have actually believed that Goodman was experiencing headaches caused by his eyeglasses, but would not say so because prison officials, notwithstanding the written VDOC policy, had forbidden them from prescribing contact lenses even if medically indicated. In support, Goodman points to his factual allegations that Dr. Brown told him that he would inquire as to whether the prison officials would allow Goodman to obtain contacts at his own expense and that both Defendants told him that they could not prescribe him contact lenses under the VDOC policy and would face consequences if they did.

At best, Goodman's factual assertions might establish that Defendants followed the VDOC policy and that Dr. Brown made an effort on Goodman's behalf to obtain an exception to the policy. But there is no evidence that Dr. Brown told any prison official that, in his medical judgment, contact lenses were medically indicated under the policy as opposed to simply an appropriate form of vision correction. Nor is there any evidence that Dr. Brown or Dr. Spruill were told by the prison officials that, notwithstanding the VDOC policy, they could not prescribe contact lenses even if, in their medical judgment, the prescription was indicated to prevent headaches. Moreover,

12

Goodman's theory is inconsistent with the undisputed fact that, after both Defendants had concluded that Goodman's subjective complaints of headaches were not related to his prescription eyeglasses, the VDOC referred Goodman to a specialist in ophthalmology, Dr. Gupta, for evaluation of other possible causes for his headaches. Accordingly, Goodman's theory is much too speculative and conclusory to defeat Defendants' motion for summary judgment.

                                    B.

Goodman also appeals the district court's denial of his request for discovery and for appointment of an expert witness. Goodman had sought to inquire into whether Defendants treated non-prisoners differently than prisoners and he wanted the opportunity to obtain a medical opinion and develop other evidence that would refute Defendants' medical judgments. We find no abuse of discretion in the district court's rulings. The discovery and expert opinions that Goodman sought might or might not have substantiated his opinion that his headaches were causally related to his wearing prescription eyeglasses, but they would not have supported his claim that Defendants were subjectively aware of this causal relationship and yet, with deliberate indifference thereto, issued medical opinions to the contrary. Accordingly, we affirm these rulings as well.

13

IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to the Defendants. We also find no reversible error in the district court's orders denying Goodman an expert witness and discovery.[3]

AFFIRMED

---

[3] In the event that we reversed the grant of summary judgment to Dr. Brown and Dr. Spruill, Goodman requested that we also reverse the district court's order dismissing his § 1983 deliberate-indifference claim against Dr. Krym for lack of service and that we instruct the district court to appoint counsel for Goodman on remand. Because we affirm the grant of summary judgment to Dr. Brown and Dr. Spruill, we do not address these issues.